IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. _____ |
| LANE'S EQUIPMENT RENTAL, INC., DANIEL MCGUFFEE, DONALD MONROE, and RHONDA MONROE, | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the Plaintiff, Acuity, A Mutual Insurance Company ("Acuity"), pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, and for its Complaint for Declaratory Judgment, alleges as follows:

### I.      THE PARTIES

1.      Acuity is an insurance company incorporated under the laws of the State of Wisconsin and authorized to transact business in the State of Georgia. Acuity's principal place of business is 2800 S. Taylor Drive, Sheboygan, WI 53081.

2.      Lane's Equipment Rental, Inc. ("Lane's") is a for-profit corporation located and operating in Hamilton County, Tennessee. Lane's has a principal place

of business located at 619 Hudson Road, Chattanooga, Tennessee 37405. Lane's may be served through its registered agent, R.W. Peters, 320 McCallie Avenue, Chattanooga, Tennessee 37402.

3.     Daniel Ralph McGuffee ("Mr. McGuffee") is an individual residing in the State of Tennessee and may be served at his residence at 12629 Dayton Pike, Soddy Daisy, Tennessee 37379.

4.     Donald Monroe ("Mr. Monroe") is a citizen and resident of Cobb County, Georgia. Upon information and belief, Mr. Monroe may be served at 919 Sugar Valley Road Southwest, Cartersville, Georgia 30120.

5.     Rhonda Monroe ("Mrs. Monroe") is a citizen and resident of Cobb County, Georgia. Upon information and belief, Mrs. Monroe may be served at 919 Sugar Valley Road Southwest, Cartersville, Georgia 30120.

## II.     VENUE AND JURISDICTION

6.     Acuity incorporates by reference the allegations contained in paragraphs 1 through 5.

7.     This case is brought pursuant to the Declaratory Judgment Act as codified in 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. Jurisdiction is proper within this Court pursuant to 28 U.S.C. § 1332 as the parties to this action are citizens and residents of different states and the amount in controversy exceeds $75,000,

exclusive of interest and costs. At issue is an insurance contract negotiated in the Eastern District of Tennessee and delivered in the Eastern District of Tennessee. However, the basis for this action is a judgment that was entered against Acuity, Lane's, and Mr. McGuffee in the Superior Court for Whitfield County, Georgia, which is the Northern District of Georgia.

8.    As will be more fully set forth below, Acuity issued policy number X88627 to Lane's for the policy period of February 7, 2015, thru February 7, 2016 ("the policy"). The policy was negotiated and delivered in the Eastern District of Tennessee. Mr. Monroe and Mrs. Monroe brought suit against Acuity, Lane's, and Mr. McGuffee in the Superior Court of Whitfield County, Georgia. A judgment was entered in the Superior Court for Whitfield County, Georgia. Therefore, venue and jurisdiction are proper in the U.S. District Court for the Northern District of Georgia, Rome Division, pursuant to 28 U.S.C. § 1391.

## III. FACTS

9.    Acuity incorporates by reference the allegations contained in paragraphs 1 through 8.

10.    On February 3, 2016, a truck that was owned by Lane's was involved in a motor vehicle accident. The truck was being operated by Mr. McGuffee. While operating the truck owned by Lane's, Mr. McGuffee was making a left-hand turn

out of a place of business (All South Metals) to travel southbound on South Dixie Highway in Dalton, Georgia. While Mr. McGuffee was making a left-hand turn, Greefus Patterson ("Mr. Patterson") was operating his vehicle traveling northbound on South Dixie Highway in Dalton, Georgia. Mr. Patterson failed to notice Mr. McGuffee making his left-hand turn and veered right to avoid making contact with Mr. McGuffee's vehicle. In so doing, Mr. Patterson struck a pedestrian that was off the roadway. The pedestrian, Mr. Monroe, sustained injuries as a result of the February 3, 2016, accident.

11.    In May 2016, Mr. Monroe, along with Mrs. Monroe, filed a lawsuit against Lane's and other Defendants in the Superior Court of Whitfield County, Georgia, docket no. 16CI833-J ("the tort litigation"). Shortly thereafter, the tort litigation was amended to include Acuity as a named Defendant   allegedly under Georgia's direct-action statute. See O.C.G.A. §§ 40-1-112, 40-2-140 *et seq*.

12.    Acuity, as the liability insurer of Lane's, provided Lane's and Mr. McGuffee with a defense in the tort litigation.

13.    At all times relevant, Acuity provided a vigorous defense of Lane's and Mr. McGuffee in the tort litigation.

14.    Acuity made good faith efforts and attempts to settle the tort litigation with Mr. Monroe and Mrs. Monroe.

15.    A court ordered mediation was attempted in June 2018. Mr. Monroe and Mrs. Monroe never made any settlement demand for less than $1,000,000. As a show of good faith, Acuity, on behalf of Lane's and Mr. McGuffee, made a settlement offer of $130,000. Mr. Monroe and Mrs. Monroe would not decrease their settlement demand.

16.    On August 31, 2018, counsel for Mr. Monroe and Mrs. Monroe made another demand upon counsel for Acuity, Lane's, and Mr. McGuffee of $1,000,000.

17.    In October 2018, counsel for Mr. Monroe and Mrs. Monroe reiterated that they would accept nothing less than the $1,000,000 demand made.

18.    Counsel for Mr. Monroe and Mrs. Monroe never negotiated in good faith in attempting to reach an amicable resolution in the tort litigation. 25.    In May 2019, a jury trial in the tort litigation was completed. On May 10, 2019, a final judgment was entered by the Court. The judgment awarded Mr. Monroe $20,000,000, and the judgment awarded Mrs. Monroe $1,600,000. The judgment apportioned 99.99% of fault against Acuity, Lane's, and Mr. McGuffee, while apportioning 0.01% of the verdict against Mr. Patterson.

19.    The jury found in favor of the Acuity, Lane's, and Mr. McGuffee on the issues of stubborn litigiousness, bad faith, and unnecessary trouble and expense.

The jury also found in favor of Acuity, Lane's, and Mr. McGuffee on the issue of punitive damages.

20.    Acuity, Lane's, and Mr. McGuffee sought a timely motion for a new trial shortly on June 7, 2019. The trial court denied that motion for a new trial on August 10, 2020.

21.    Acuity, Lane's, and Mr. McGuffee sought appeal before the Court of Appeals in the State of Georgia. The issues were briefed and argued, and on November 3, 2021, the Georgia Court of Appeals affirmed the trial court's ruling.

22.    On December 14, 2021, Acuity, Lane's, and Mr. McGuffee all timely filed a petition for writ of certiorari with the Georgia Supreme Court. That writ is presently under advisement with the Georgia Supreme Court.

23.    On the date of the accident, Acuity was the liability insurer for Lane's under the policy. A true and accurate copy of the policy is attached hereto as "Exhibit A".

24.    The policy was issued and delivered to Lane's at the address of P.O. Box 17265, Chattanooga, Tennessee 37415. The agent identified on the policy was Sunbelt Insurance Group of Chattanooga, Tennessee.  All negotiations for the policy took place in Tennessee.

25.    The policy provided the following insuring agreement with respect to commercial auto liability ("auto liability") coverage:

### SECTION II - LIABILITY COVERAGE

**A.    COVERAGE**

We will pay all sums an *insured* legally must pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered *auto.*

We will also pay all sums an *insured* legally must pay as a *covered pollution cost or expense* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of covered *autos.*

However, we will only pay for the *covered pollution cost or expense* if there is either *bodily injury* or *property damage* to which this insurance applies that is caused by the same *accident.*

We have the right and duty to defend any *insured* against a *suit* asking for such damages or a *covered pollution cost or expense.* However, we have no duty to defend any *insured* against a *suit* seeking damages for *bodily injury* or *property damage* or a *covered pollution cost or expense* to which this insurance does not apply. We may investigate and settle any claim or *suit* as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

26.    The policy provided the following language regarding who is an insured under the policy:

**1.    Who Is an Insured**
The following are *insureds:*
a.    You for any covered *auto.*

7

b.  Anyone else while using with your permission a covered *auto* you own, hire or borrow except:

(1)  The owner or anyone else from whom you hire or borrow a covered *auto*. This exception does not apply if the covered *auto* is a *trailer* connected to a covered *auto* you own.

(2)  Your *employee* if the covered *auto* is owned by that *employee* or a member of his or her household.

(3)  Someone using a covered *auto* while he or she is working in a business of selling, servicing, repairing, parking or storing *autos* unless that business is yours.

(4)  Anyone other than your *employees,* partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their *employees,* while moving property to or from a covered *auto.*

(5)  A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered       *auto* owned by him or her or a member of his or her household.

c.  Anyone liable for the conduct of an *insured* described above but only to the extent of that liability.

27.   The auto liability portion of the policy provided the following language regarding limits of insurance:

## SECTION II - LIABILITY COVERAGE
**\*\*\*\***

**C.    LIMIT OF INSURANCE**

Regardless of the number of covered *autos, insureds,* premiums paid, claims made or vehicles involved in the *accident,* the most we will pay for the total of all damages and *covered pollution cost or expense* combined, resulting from any one *accident* is the Limit of Insurance for Liability Coverage shown in the Declarations.

All *bodily injury, property damage* and *covered pollution cost or expense* resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one *accident.*

No one will be entitled to receive duplicate payments for the same elements of *loss* under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

28.    The auto liability portion of the policy provided an insurance limit of $1,000,000 per "accident", which means Acuity should be obligated to pay no more than $1,000,000 of any judgment rendered against Lane's in the above-styled action, under the auto liability portion of the policy.

29.    The policy also provided commercial excess liability coverage ("excess liability") under the following insuring agreement:

## SECTION I – COVERAGES

**1.    Insuring Agreement**

a.    We will pay those sums, in excess of the amount payable under the terms of any *underlying insurance,* that the insured becomes legally obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

We will also pay those sums that the insured becomes legally obligated to pay as damages because of *injury* or damage to which the insurance provided under the Coverage Extension applies as set forth in paragraph 4 below.

b.    We have the right to participate in the investigation or settlement of claims or the defense of the insured against suits seeking damages because of *injury* or damage to which this insurance may apply. We have a duty to investigate or settle such claims or to defend the insured against such suits when the applicable Limit of Insurance of the *underlying insurance* has been used up by payment of judgments, settlements and any cost or expense subject to such limit.

We will have the right and duty to participate in the investigation and settlement of claims or the defense of the insured against suits seeking damages because of *injury* or damage to which the insurance provided under the Coverage Extension may apply.

This right or duty to defend is limited as set forth in paragraph 3 below.

However, we will have no duty to defend the insured against any suit seeking damages for *injury* or damage to which this insurance does not apply.

c.     The amount we will pay for damages is limited as described in Section II - Limit of Insurance.

d.     This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the *underlying insurance,* except:

(1)     We have no obligation under this insurance with respect to any claim or suit that is settled without our consent; and

(2)     With respect to any provisions to the contrary contained in this insurance.

30.     The excess liability portion of the policy also provided the following:

## SECTION II - LIMIT OF INSURANCE

1.     The Limits of Insurance shown in the Declarations and the rules below define the most we will pay under the terms of this insurance regardless of the number of:

a.     Insureds;
b.     Claims made or suits brought;
c.     Persons or organizations making claims or bringing suits.

2.     The General Aggregate Limit is the most we will pay for all damages under Section I -Coverages, other than damages arising out of:

a.     The *products-completed operations hazard;* or

> b.   The ownership, operation, maintenance, use, loading or unloading, or entrustment to others, of an auto.

31.   The excess liability portion of the policy defined "Aggregate limit" as:

1.   *"Aggregate limit"* means the maximum amount stated in the policy for which the insurer will be liable, regardless of the number of covered claims.

32.   The excess liability portion of the policy provided a general aggregate insurance limit of $1,000,000, which means Acuity should be obligated to pay no more than $1,000,000 of any judgment rendered against Lane's and/or Mr. McGuffee in the tort litigation under the excess liability portion of the policy. Together, under both the auto liability portion of the policy and the excess liability portion of the policy, Acuity should be obligated to pay no more than $2,000,000 of any judgment rendered against Lane's and/or Mr. McGuffee in the above-styled action.

## IV.   DECLARATORY RELIEF SOUGHT

33.   Acuity incorporates by reference the allegations contained in paragraphs 1 through 32.

34.   Acuity seeks a declaration from this Court that Tennessee substantive law will guide any assessment of contractual and extra-contractual obligations, including the issues of Acuity's exposure under the policy limits. Acuity alleges and avers that Georgia, as well as Tennessee, follows the choice of law rule, *lex loci*

*contractus*. See <u>Shorewood Packaging Corp. v. Commercial Union Ins. Co.</u>, 865 F. Supp. 1577, 1578 (N.D. Ga. 1994).

35.     Acuity alleges  the policy's most significant contacts all lie within the State of Tennessee.

36.     Acuity alleges the policy was negotiated in Tennessee for a Tennessee corporation by a Tennessee agent.

37.     Acuity alleges because the policy was delivered in Tennessee to a Tennessee corporation by Sunbelt Insurance Group of Chattanooga, Tennessee, Tennessee substantive law should guide any assessment of contractual and extra-contractual obligations, including the issues of Acuity's exposure under the policy limits as well as the assessment of whether it has acted in bad faith in its adjustment, handling, and defense of Lane's and Mr. McGuffee in the tort litigation. See <u>Renaissance Recovery Sols., LLC v. Monroe Guar. Ins. Co.</u>, No. CV 114-102, 2016 WL 3866564, at *3 (S.D. Ga. July 13, 2016), <u>aff'd,</u> No. 18-11511, 2019 WL 2024290 (11th Cir. May 8, 2019) (where the Eleventh Circuit held that "Michigan law … governs any available penalties for nonpayment of insurance benefits under the … policies[]" because the policies at issue were delivered in Michigan.); see also, <u>Pinkerton & Laws, Inc. v. Royal Ins. Co. of Am.</u>, 227 F. Supp. 2d 1348, 1357 (N.D. Ga. 2002) (finding Georgia bad faith penalties do not apply to contract

governed by Florida law). See also, <u>Federal Ins. Co. v. National Distributing Co.,</u> <u>Inc.,</u> 417 S.E.2d 671, 674 (Ga. App. 1992) (where the Georgia Court of Appeals held that an insured's suit against its umbrella liability insurer with respect to a Florida auto accident involving the insured's employee was governed by Georgia bad faith law because the insurance contract was made in Georgia.)

38.     Acuity seeks a declaration that as a result of Tennessee substantive law guiding any assessment of contractual and extra-contractual obligations, Acuity cannot be liable for more than the policy limits under the policy contract itself, which is $2,000,000 in this matter.

39.     Acuity alleges and avers it will not be required to indemnify Lane's and/or Mr. McGuffee of any portion of the verdict in the tort litigation exceeding $2,000,000.

40.     To the extent any bad faith is sought against Acuity, a declaration is being sought that Lane's and/or Mr. McGuffee may not assign any potential bad faith claim to Mr. Monroe and/or Mrs. Monroe. Acuity alleges and avers that Tennessee law does not permit the assignment of a bad faith claims. See <u>Electric Ins.</u> <u>Co. v. Nationwide Mut. Ins. Co.</u>, 384 F. Supp. 2d 1190, 1194 (W.D. Tenn. 2005) (explaining that claims for bad faith ... are not assignable under Tennessee law). Therefore, Acuity alleges and avers that because Tennessee law guides any

assessment of whether Acuity has acted in bad faith in its adjustment, handling, and defense of Lane's and/or Mr. McGuffee in the tort litigation, there can be no assignment of a potential bad faith claim from Lane's and/or Mr. McGuffee to Mr. Monroe and/or Mrs. Monroe.

41.     Acuity seeks a declaration from this Court that any potential claim of bad faith that may be brought against it in its adjustment, handling, and defense of Lane's and/or Mr. McGuffee in the tort litigation will be analyzed and judged by Tennessee substantive law.

42.     Acuity alleges and avers that it has not acted in bad faith. Acuity alleges and avers it has not been negligent in failing to settle Mr. Monroe's and Mrs. Monroe's claims against Lane's and/or Mr. McGuffee. Furthermore, Acuity alleges and avers "[m]ere negligence is not sufficient to impose liability for failure to settle." Johnson v. Tennessee Farmers Mut. Ins. Co., 205 S.W.3d 365, 370-71 (Tenn. 2006). Acuity alleges and avers that "mistaken judgment" is not bad faith on its part as Acuity performed its investigation "with ordinary care and diligence." See id. Acuity alleges and avers it has performed its investigation of the Mr. Monroe's and Mrs. Monroe's claims with "ordinary care and diligence" and that, not only was it not negligent in in its adjustment, handling, and defense of Lane's and Mr. McGuffee, no conduct by Acuity amounts to anything more than negligence. Acuity alleges and

avers that it has not placed its interest above Lane's and Mr. McGuffee, and Acuity alleges and avers that it has not acted in bad faith.

43.     Acuity seeks a declaration that Georgia substantive law and, notably, S. Gen. Ins. Co. v. Holt, 416 S.E.2d 274 (Ga. 1992) do not apply to Acuity in its adjustment, handling, and defense of Lane's and Mr. McGuffee in the tort litigation.

44.     In the alternative, Acuity alleges and avers that it has acted in good faith in defending Lane's and Mr. McGuffee in the tort litigation in accordance with Holt. Acuity alleges and avers that it is not guilty of negligence, fraud, or bad faith in defending Lane's and Mr. McGuffee in the tort litigation. See id. at 276. Acuity alleges and avers that when deciding to make settlement offers to Mr. Monroe and Mrs. Monroe in the tort litigation, it gave equal consideration to the interests of Lane's and Mr. McGuffee. Acuity alleges and avers the facts presented in the tort litigation against Lane's and Mr. McGuffee did not demonstrate "clear liability". See id. Acuity alleges and avers that it has acted in good faith.

45.     Acuity alleges and avers that it has not acted in bad faith in its adjustment, handling, and defense of Lane's and Mr. McGuffee in the tort litigation. Acuity possessed a reasonable belief that Mr. Monroe's and Mrs. Monroe's claims against Lane's and Mr. McGuffee in the tort litigation were subject to meritorious defenses. Acuity made several reasonable settlement offers throughout the tort

litigation, but counsel for Mr. Monroe and Mrs. Monroe would never negotiate in good faith.

46.    Acuity alleges and aver that it has not been stubbornly litigious, and Acuity alleges and avers that it has not put forth any frivolous defense in the tort litigation.

47.    Acuity alleges and avers that it was obligated to vigorously defend Lane's and Mr. McGuffee after making reasonable settlement offers, and Acuity alleges and avers that it did vigorously defend Lane's and Mr. McGuffee in the tort litigation. Acuity maintains the defenses put forth on behalf of Lane's and Mr. McGuffee were valid, meritorious, and required to protect Lane's and Mr. McGuffee from liability.

48.    Acuity alleges and avers that is has no "affirmative duty … to engage in negotiations concerning a settlement demand that is in excess of the insurance policy's limits." Cotton States Mut. Ins. Co. v. Brightman, 580 S.E.2d 519, 522 (Ga. 2003). Acuity has done nothing but act in good faith throughout the entire tort litigation.

49.    Acuity further relies upon all other language, provisions, terms, conditions, and exclusions of the policy in this Declaratory Judgment Action.

**WHEREFORE**, premises considered, Acuity prays as follows:

1.      That the Defendants be required to appear and answer herein;

2.      That this Court adjudicate and declare that Tennessee substantive law will guide any assessment of contractual and extra-contractual obligations under the policy;

3.      That this Court adjudicate and declare as a result of Tennessee substantive law guiding any assessment of contractual and extra-contractual obligations, Acuity cannot be liable in the tort litigation for more than the combined policy limits of $2,000,000;

4.      That this Court adjudicate and declare that Lane's and/or Mr. McGuffee may not assign any potential bad faith claim to Mr. Monroe and/or Mrs. Monroe;

5.      That this Court adjudicate and declare that any bad faith duties will be analyzed and judged by Tennessee substantive law;

6.      That this Court adjudicate and declare that Georgia substantive law <u>S. Gen. Ins. Co. v. Holt</u>, 416 S.E.2d 274 (Ga. 1992) does not apply to Acuity in its adjustment, handling, and defense in the tort litigation;

7.      That this Court adjudicate and declare that Acuity has not acted in bad faith under applicable Tennessee precedent in its adjustment, handling, and defense of the tort litigation;

8.      That the costs of this action be assessed against the Defendants; and

9.      For such further legal and equitable relief as this Court deems just and

proper.

Respectfully submitted, this 28th day of April 2022.

FREEMAN MATHIS & GARY, LLP

*/s/ Matthew F. Boyer*
MATTHEW F. BOYER
Georgia Bar No.:  141512
mboyer@fmglaw.com
M. Cole Walker, Jr.
Georgia Bar No. 688704
Cole.walker@fmglaw.com
*Attorneys for Acuity, A Mutual Insurance*
*Company*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
770-818-0161 (direct)
770-937-9960 (Fax)

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 5.1</u>

I, the undersigned, hereby certify that this document was prepared using Times New Roman 14-point font, one of the fonts and typeface sizes allowed under N.D. Ga. LR Rule 5.1.

Respectfully submitted, this the 28th day of April 2022.

*/s/ Matthew F. Boyer*
MATTHEW F. BOYER
Georgia Bar No.:  141512
mboyer@fmglaw.com

*Attorneys for Acuity, A Mutual Insurance Company*