## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

ACUITY, A MUTUAL INSURANCE
COMPANY,

        Plaintiff,

v.

LANE'S EQUIPMENT RENTAL,
INC., DANIEL MCGUFFEE,
DONALD MONROE, and
RHONDA MONROE,

        Defendants.

CIVIL ACTION FILE
4:22-CV-00101-JPB

---

**Defendants Donald Monroe And Rhonda Monroe's Motion To Dismiss
Plaintiff Acuity, A Mutual Insurance Company's Complaint**

Naveen Ramachandrappa
BONDURANT MIXSON & ELMORE LLP
1201 W Peachtree St NW Ste 3900
Atlanta, GA 30309
404-881-4100

*Attorneys for Defendants
Donald Monroe and Rhonda Monroe*

# Table Of Contents

Introduction ....................................................................................................1

Factual & Procedural Background ....................................................................1

Legal Standard ..............................................................................................7

    1.    In A Factual Attack On Subject-Matter Jurisdiction, This Court Must Consider Material Outside The Pleadings And Decide Disputed Facts. .........................................................................7

    2.    This Court Has Substantial Discretion Under The Federal Declaratory Judgment Act To Decline To Exercise Jurisdiction..........8

    3.    In Evaluating Whether A Complaint States A Claim, The Properly Pled Facts Must State Claim For Relief That Is Plausible On Its Face. .............................................................9

Argument........................................................................................................9

    1.    This Court Should Dismiss Acuity's Complaint For Lack Of Subject-Matter Jurisdiction Under The Ripeness Doctrine. ................9

    2.    Assuming It Had Jurisdiction, This Court Should Not Exercise Jurisdiction Under The Federal Declaratory Judgment Act...............15

    3.    Assuming It Had And Should Exercise Jurisdiction, This Court Should Dismiss Acuity's Request For A Declaration Affecting The Underlying Action For Failure To State A Claim. ......................17

Conclusion ...................................................................................................19

## Introduction

This is an insurance declaratory judgment action brought by Plaintiff Acuity, A Mutual Insurance Company ("Acuity") against Defendants Lane's Equipment Rental, Inc. ("Lane's), Daniel McGuffee ("McGuffee"), and Donald and Rhonda Monroe (the "Monroes"). Acuity asks this Court to issue certain declaratory relief regarding Acuity's liability to the Monroes, Lane's, and McGuffee relating to an underlying personal-injury judgment that the Monroes have obtained against Acuity, Lane's, and McGuffee in Georgia state court. *See* Compl. [Doc. 1] at 18-19.

The Monroes now move to dismiss. *See* Fed. Civ. P. 12 (b). *First*, this Court lacks subject-matter jurisdiction because the appeal in the underlying action is not yet complete and, thus, Acuity's claims are not ripe. *See* Fed. R. Civ. P. 12 (b)(1). *Second*, assuming it had jurisdiction, this Court should decline to exercise jurisdiction under the Federal Declaratory Judgment Act pursuant to the factors set forth in *Ameritas Variable Life Insurance Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005). *Third*, assuming it had and should exercise jurisdiction, Acuity's request for declaratory relief affecting the underlying action fails to state a claim upon which relief can be granted. *See* Fed. Civ. P. 12 (b)(6).

## Factual & Procedural Background

On the morning of February 3, 2016, McGuffee was driving a tractor-trailer

for Lane's. *See* Compl. [Doc. 1] ¶ 10.[1] As he exited the parking lot of All South

Metals in Dalton, Georgia, McGuffee negligently and without warning turned onto

South Dixie Highway. *Id.* As he attempted to turn left, McGuffee's tractor-trailer

blocked both lanes of the road, and the dark color of the trailer blended in with the

wet, newly-paved road, the overcast sky, and dark silhouette of the trees surrounding

the road. *See Lane's v. Monroe*, Monroes' Ct. App. Br. (Ex. 6) at 1. As a result, when

Greefus Patterson was driving his truck north on South Dixie Highway, he did not

---

[1] The Monroes will cite to filings from the underlying action. *See* Decl. of N. Ramachandrappa, attached as Exhibit 1 to this motion. These include the following:

- the state court's amended final judgment ("*Monroe v. Lane's*, Am. Final Judgment") attached as Exhibit 2 to this motion;
- the state court's order denying Acuity's motion for new trial ("*Monroe v. Lane's*, Order Denying Mot. for New Trial") attached as Exhibit 3 to this motion;
- Acuity's supersedeas appeal bonds in the state court ("*Monroe v. Lane's*, Acuity's Supersedeas Bonds") attached as Exhibit 4 to this motion;
- Acuity's Court of Appeals brief ("*Lane's v. Monroe*, Acuity's Ct. App. Br.") is attached as Exhibit 5 to this motion;
- the Monroes' Court of Appeals brief ("*Lane's v. Monroe*, Monroes' Ct. App. Br.") is attached as Exhibit 6 to this motion;
- the Court of Appeals opinion ("*Lane's v. Monroe*, Ct. App. Op.") is attached as Exhibit 7 to this motion;
- Acuity's Supreme Court Petition ("*Lane's v. Monroe*, Acuity's Sup. Ct. Pet.") is attached as Exhibit 8 to this motion;
- and the Monroes' Supreme Court response brief ("*Lane's v. Monroe*, Monroes' Sup. Ct. Resp.") is attached as Exhibit 9 to this motion.

This Court may properly consider these documents because it may take judicial notice of them, they are central to Acuity's complaint and undisputed, and/or they are relevant to subject-matter jurisdiction. *See, e.g.*, *South River Watershed Alliance, Inc. v. DeKalb Cnty., Ga.*, 484 F.Supp.3d 1353, 1365 (N.D. Ga. 2020).

see McGuffee's tractor-trailer until it was too late and had to swerve his truck to the right at the last minute. *See* Compl. [Doc. 1] ¶ 10.

However, at that same moment, Donald Monroe was in or near the parking lot of his employer, All South Metals, and Patterson's truck directly hit Mr. Monroe. *See id.* Though Patterson's truck hit Mr. Monroe, after investigating this crash, Georgia State Patrol Sergeant Christopher Harris found that Patterson had the right-of-way and, by failing to yield, McGuffee was the initial cause of this collision. *See Lane's v. Monroe*, Monroes' Ct. App. Br. (Ex. 6) at 1.

Being hit by a truck was obviously catastrophic. Mr. Monroe suffered and will continue to suffer horrific, life-altering injuries, including a below-the-knee amputation of his left leg, a shattered right femur bone, and a destroyed lower body. *Id.* at 2. He faces a life of phantom pain, nerve pain, pain from fatigue, pain from overuse; the tremendous risk of falls; his skin having a constant sheering force of the prosthesis; and future dependence on a wheelchair. *Id.* The life of Rhonda Monroe, Mr. Monroe's wife, also will never be the same. Now, there is no physical intimacy in the marriage, they sleep in separate beds, and Mrs. Monroe must live with the harrowing image of her husband's leg completely mangled seared in her mind. *Id.*

Given the combined fault of McGuffee, Lane's, and Patterson, and the Monroes' traumatic injuries, on June 23, 2016, the Monroes filed a personal-injury

lawsuit in the Superior Court of Whitfield County, State of Georgia. *See* Compl. [Doc. 1] ¶ 11.[2] The Monroes named Lane's and McGuffee as defendants, as well as their insurer, Acuity, A Mutual Insurance Company, under Georgia's direct-action statute. *Id.* The Monroes also named Patterson as a defendant, and Patterson was represented by counsel paid by his separate insurer.

Beginning on May 6, 2019, the Georgia state court conducted a jury trial, and on May 10, 2019, the jury returned their verdict. *See id.* ¶ 18. The jury found in favor of the Monroes on their negligence claims against all defendants, but against the Monroes on punitive damages and attorney fees. *Id.* ¶¶ 18-19. The jury then found that Mr. Monroe's damages were $20 million and Mrs. Monroe's damages were $1.6 million. *Id.* ¶ 18. And the jury apportioned 99.99% of the fault against Acuity, Lane's, and McGuffee—making them liable for $21,597,840.00—and 0.01% of the fault against Patterson—making him liable for $2,160.00. *Id.*

On May 15, 2019, the Georgia state court entered judgment on the jury's verdict, plus court costs and post-judgment interest, *nunc pro tunc* to May 10, 2019, the date of the verdict. *See id.* The Georgia state court later entered an amended

---

[2] The Monroes complaint was submitted for filing on June 23, 2016, and the state court docketed the filing on June 27, 2016. Acuity's complaint alleges that the complaint was filed in May 2016. The Monroes are not sure why Acuity has a different date for the filing of the complaint, but any difference seems immaterial.

judgment, adding Acuity, Lane's, and McGuffee's liability for prejudgment interest. *See Monroe v. Lane's*, Am. Final Judgment (Ex. 2).

On June 7, 2019, Acuity, Lane's, and McGuffee filed a motion for new trial or remittitur in the Georgia state court. *See* Compl. [Doc. 1] ¶ 20. On August 10, 2020, the Georgia state court denied that motion in a detailed seven-page order. *Id.*; *see Monroe v. Lane's*, Order Denying Mot. for New Trial (Ex. 3).

Following the denial of that motion, and to stay execution of the judgment pending final resolution of an appeal, Acuity, Lane's, and McGuffee posted a $25 million supersedeas appeal bond. *See Monroe v. Lane's*, Acuity's Supersedeas Bonds (Ex. 4). That bond is still in effect and continues to stay execution.

Acuity, Lane's, and McGuffee first appealed to the Georgia Court of Appeals, which docketed the appeal on October 2, 2020. *See* Compl. [Doc. 1] ¶ 21; *Lane's v. Monroe*, Acuity's Ct. App. Br. (Ex. 5); *Lane's v. Monroe*, Monroes' Ct. App. Br. (Ex. 6); *Lane's v. Monroe*, Ct. App. Op. (Ex. 7).

While that appeal was pending and had not yet been decided, on June 22, 2021, Acuity filed a declaratory judgment action—which is essentially the same as the one it has filed in this Court—in the United States District Court for the Eastern District of Tennessee. *See Acuity, A Mut. Ins. Co. v. Lane's Equipment Rental, Inc.*, No. 1:21-CV-00143, Doc. 1 (E.D. Tenn.). Because Acuity inexplicably filed that

action without any good-faith basis for personal jurisdiction over the Monroes in Tennessee, on September 17, 2021, the Monroes moved to dismiss Acuity's complaint. *See id.*, Doc. 38. Rather than (or unable to) respond to the Monroes' motion, Acuity filed a notice of dismissal without prejudice—thus confirming that Acuity's filing was blatantly improper forum shopping. *See id.*, Doc. 45.

On November 3, 2021, the Georgia Court of Appeals decided the appeal in the underlying action. *See* Compl. [Doc. 1] ¶ 21; *Lane's v. Monroe*, Ct. App. Op. (Ex. 7). In a unanimous, unreported, and non-precedential opinion, the Court of Appeals easily affirmed the trial court's entry of judgment. *See id.*

Not satisfied with the Georgia Court of Appeals' opinion, Acuity, Lane's, and McGuffee continued their appeal by petitioning, on December 14, 2021, to the Georgia Supreme Court for a writ of certiorari. *See* Compl. [Doc. 1] ¶ 22; *Lane's v. Monroe*, Acuity's Sup. Ct. Pet. (Ex. 8); *Lane's v. Monroe*, Monroes' Sup. Ct. Br. (Ex. 9). That petition has not yet been decided, and thus, execution of the judgment in the underlying action remains stayed. *See* Compl. [Doc. 1] ¶ 22.

Finally, on April 29, 2022, Acuity re-filed this declaratory judgment action, this time in Georgia before this Court. *See* Compl. [Doc. 1]. Among other things, and in ***direct conflict*** with the underlying judgment finding Acuity liable to the Monroes for $21,597,840.00 (plus post-judgment interest and costs), Acuity requests

"[t]hat this Court adjudicate and declare ... Acuity cannot be liable in the tort litigation for more than the combined policy limits of $2,000,000." *Id.* at 18. The Monroes now timely move to dismiss. *See* Mot. for Extension [Doc. 11] (granted).

## Legal Standard

The Monroes' motion to dismiss involves at least three different sets of legal rules: (1) subject-matter jurisdiction; (2) the Federal Declaratory Judgment Act; and (3) failure to state a claim upon which relief can be granted. The Monroes will set forth the legal standard for each set of rules separately.

**1.     In A Factual Attack On Subject-Matter Jurisdiction, This Court Must Consider Material Outside The Pleadings And Decide Disputed Facts.**

"Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "'Facial attacks' on the complaint 'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion.'" *Id.* "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.*

Moreover, "when the attack is factual," "the trial court may proceed as it never could under 12(b)(6) or [Rule] 56." *Id.* "Because at issue in a factual 12(b)(1) motion

is the trial court's jurisdiction—its very power to hear the case," "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

**2.    This Court Has Substantial Discretion Under The Federal Declaratory Judgment Act To Decline To Exercise Jurisdiction.**

The Federal Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, **<u>may</u>** declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201 (a) (emphasis added). In other words, it is "'an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant.'" *Ameritas*, 411 F.3d at 1330. "It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Id.*

"In fact, in cases such as this, the Supreme Court has expressed that 'it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'" *Id.* "The Supreme Court has warned that '[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.'" *Id.*

3.     **In Evaluating Whether A Complaint States A Claim, The Properly Pled Facts Must State Claim For Relief That Is Plausible On Its Face.**

"Although detailed factual allegations are not necessarily required, the pleading must contain more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Estate of Schultz v. Bd. of Regents of Univ. Sys. of Ga.*, 554 F.Supp.3d 1274, 1278 (N.D. Ga. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

**Argument**

1.     **This Court Should Dismiss Acuity's Complaint For Lack Of Subject-Matter Jurisdiction Under The Ripeness Doctrine.**

"The ripeness doctrine involves consideration of both jurisdictional and prudential concerns." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Id.* "'Even when the constitutional minimum has been met, however, prudential considerations may still counsel judicial restraint.'" *Id.*

"Ripeness is peculiarly a question of timing." *Thomas v. Union Carbide*, 473 U.S. 568, 580 (1985). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."

*Texas v. United States*, 523 U.S. 296, 300 (1998). "For a declaratory judgment to issue, there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977). Thus, "[t]he ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Digital Props.*, 121 F.3d at 589. It "'seeks to avoid entangling courts in the hazards of premature adjudication.'" *Id.*

Here, because Acuity's appeal in the underlying action is not yet complete, Acuity's claims in this action are not currently ripe. Consider the simple fact that, if it does as Acuity asks, the Georgia Supreme Court will grant a writ of certiorari and review whether the trial court correctly entered judgment on the jury's verdict. *See* Compl. [Doc. 1] ¶ 22; *Lane's v. Monroe*, Acuity's Sup. Ct. Pet. (Ex. 8).

That process—the grant of certiorari and a merits review of the case—could last another twelve months. And if the Georgia Supreme Court reverses the trial court, there will no longer be a judgment in the underlying action and, thus, none of Acuity's concerns about liability for the jury's verdict would apply. In other words, Acuity's claims are entirely contingent on something that has not yet happened and, indeed, may not happen at all—a final judgment with all appeals exhausted.

Moreover, even if the Georgia Supreme Court denies Acuity's petition for

certiorari, that *still* would not render Acuity's claims ripe. Acuity asks this Court to declare that "Lane's and/or Mr. McGuffee may not assign any potential bad faith claim to Mr. Monroe and/or Mrs. Monroe"; "any bad faith duties will be analyzed and judged by Tennessee substantive law"; "Georgia substantive law ... does not apply to Acuity in its adjustment, handling, and defense in the tort litigation"; and "Acuity has not acted in bad faith under applicable Tennessee precedent in its adjustment, handling, and defense of the tort litigation." Compl. [Doc. 1] at 18.

But Acuity ignores the fact that the underlying action is a *direct action* against Acuity, as well as its insureds. *Id.* ¶ 11 ("[T]he tort litigation was amended to include Acuity as a **named Defendant** ... under Georgia's direct-action statute.") (emphasis added). And under the judgment in the underlying action, Acuity is liable for the *full amount* of the jury's verdict (minus the 0.01% apportioned to Greefus Patterson). *See Monroe v. Lane's*, Am. Final Judgment (Ex. 2); *Lane's v. Monroe*, Monroes' Sup. Ct. Br. (Ex. 9) at 30 ("Acuity fails to mention that it ***chose*** not to ask the trial court to limit its judgment to the policy limits.").

As a result, if Acuity's petition for certiorari is denied, the Monroes can and will collect the full judgment against Acuity *alone*. When such collection occurs, there will be no "bad faith" claims by Lane's and/or Mr. McGuffee against Acuity. Such bad faith claims would be made only if Acuity does not satisfy the full

judgment. But, given that Acuity is liable for the full amount of the jury verdict, Acuity has posted a $25 million supersedeas appeal bond, and Acuity has A+ ratings, it seems very unlikely—absent fraud by Acuity or its guarantors—that any bad faith claims against Acuity will materialize.[3] In any event, at a minimum, these collection questions reinforce the highly contingent and speculative nature of Acuity's claims.

When presented with similar negligent-failure-to-settle claims brought before appeals in the underlying action have been completed, courts around the country have dismissed the claims based on lack of ripeness.

For example, in *Spitz v. Starr Indemnity & Liability Co.*, 2021 WL 3929219 (N.D. Ill. Sept. 2, 2021), "Spitz [the plaintiff in the Underlying Lawsuit and assignee of the clams against the insurer] alleges that Starr breached its duty to settle the Underlying Lawsuit in good faith and/or with ordinary care towards the interests of Aguilar and RTI [the defendants in the Underlying Lawsuit]." *Id.* at *2. But, at the time Spitz filed an action against Starr, "the appeal [in the Underlying Lawsuit] remain[ed] pending before the Oklahoma Court of Civil Appeals." *Id.* at *1.

Based on the pending appeal in the underlying action, *Spitz* dismissed the claims as unripe. As *Spitz* explains, "[w]hile there is no Seventh Circuit precedent

---

[3] Acuity Insurance, https://www.acuity.com ("Earned an A+ rating from A.M. Best on 1/14/2021," "Earned an A+ rating from Standard & Poors (S&P) on 8/11/2020," and "Acuity Insurance is the 59th largest insurer in the nation").

for when alleged breaches of the duty to settle are ripe for adjudication, other courts have addressed the question." *Id.* at *3. "**In the Eleventh Circuit**, a claim for failure to settle in good faith is not ripe until the underlying judgment that created the insured's liability in excess of the policy limit is final." *Id.* (emphasis added). "These courts reason that because a bad faith failure to settle claim is contingent on liability in excess of the policy limit, the claim is not ripe until that liability is final." *Id.* Put simply, "[t]he basis of the instant case would dissipate upon [a] reversal," and "[a] judgment here would be based on contingent events." *Id.*

*Spitz* is just one example. As *Spitz* itself confirms, courts in this Circuit apply this rule. As the Eleventh Circuit explains, "[b]ecause the essential element of the [negligent-failure-to-settle claim] may be reversed on appeal, it is logical to require its disposition before it may form the basis for another claim." *Romano v. Am. Cas. Co.*, 834 F.2d 968, 970 (11th Cir. 1987). "In fact, *Boyd Bros. Transp. Co., Inc. v. Fireman's Fund Ins. Companies*, 729 F.2d 1047 (11th Cir. 1984), **requires the appellate process be complete** before the cause of action for bad faith insurance practice is ripe." *Id.* (emphasis added). "Such a result avoids duplicitous and unnecessary litigation ...." *Id.*; *see also Rohee v. Garrison Prop. & Cas. Ins. Co.*, 2014 WL 12479277, at *2 (S.D. Fla. Dec. 17, 2014) (applying "*Romano*" and finding that "dismissal ... without prejudice is appropriate").

If anything, this action is an even stronger case for application of the ripeness doctrine, since unlike *Spitz*, the judgment in the underlying action here is directly against Acuity, for the full amount of the jury's verdict, and is stayed by a supersedeas bond. *Compare Spitz*, 2021 WL 3929219, at *4 ("[W]hile Starr's failure to post the supersedeas bond may allow Spitz to execute the excess judgment against Aguilar and RTI, the judgment is still subject to appeal and therefore is not final.").

And the fact that *Spitz*, *Romano*, and other cases were brought by insureds (or their assignees), rather than by the insurance company, does not matter. As an initial matter, nothing in the Declaratory Judgment Act does or could create ripeness only when the action is filed by the insurance company, but not by its insureds.

In any event, the Eleventh Circuit has applied the same or similar rule to insurance companies. *See, e.g.*, *Owners Ins. Co. v. Parsons*, 610 F.App'x 895, 897 (11th Cir. 2015) (unpublished) ("Owners seeks a declaration that ... Owners has no liability for a potential judgment in excess of the Policy's limits. The legal issues Owners seeks to resolve in this case are issues that *might* be raised in a *future* bad faith refusal-to-settle suit against Owners. No such suit has in fact been failed.").

In sum, because Acuity's appeal in the underlying action is not yet complete, Acuity's claims in this action are not currently ripe and this Court lacks subject-matter jurisdiction to decide Acuity's claims. This action must be dismissed.

**2.     Assuming It Had Jurisdiction, This Court Should Not Exercise Jurisdiction Under The Federal Declaratory Judgment Act.**

Because this Court lacks subject-matter jurisdiction to decide Acuity's claims, this Court need not consider whether it should exercise its discretion to decline jurisdiction under the Federal Declaratory Judgment Act. If no such jurisdiction exists at this time, there is no discretion for this Court to exercise.

However, even assuming it had jurisdiction, this Court should decline to exercise jurisdiction under the Federal Declaratory Judgment Act pursuant to the factors set forth in *Ameritas*. In that case, the Eleventh Circuit held that:

> Guided by these general principles expressed by the Supreme Court, as well as "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts," we provide the following factors for consideration to aid district courts in balancing state and federal interests.
>> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>> (2) whether the judgment in the federal declaratory action would settle the controversy;
>> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
>> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Our list is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton*.

411 F.3d at 1330-31 (citing, among others, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995), and *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).

Here, these factors strongly support—if not demand—that this Court decline to exercise jurisdiction under the Declaratory Judgment Act. Notably, and in **direct conflict** with the underlying judgment finding Acuity liable to the Monroes for $21,597,840.00 (plus post-judgment interest and costs), Acuity requests "[t]hat this Court adjudicate and declare ... Acuity cannot be liable in the tort litigation for more than the combined policy limits of $2,000,000." Compl. [Doc. 1] at 18.

It is important to be clear about what Acuity is asking this Court to do. Acuity asks this Court to limit Acuity's liability in a *presently ongoing Georgia state court litigation*—in which the trial court has already heard and decided Acuity's liability, the Georgia Court of Appeals has already heard and decided Acuity's liability, and

the parties are waiting on the Georgia Supreme Court's certiorari decision. As will be set forth below, there is no merit to Acuity's claim.

But, putting aside any merit, it would be "uneconomical," "vexatious," and a "'[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation" for this Court to even entertain what Acuity's liability should be in a state court action in which Acuity is a named defendant. *Ameritas*, 411 F.3d at 1330. Acuity is asking this Court to overturn the judgments of both the trial court and the Georgia Court of Appeals—not to mention pre-empt the Georgia Supreme Court's decision on Acuity's pending petition for certiorari. Acuity does not and cannot provide any basis for this incredible request.

**3.     Assuming It Had And Should Exercise Jurisdiction, This Court Should Dismiss Acuity's Request For A Declaration Affecting The Underlying Action For Failure To State A Claim.**

Finally, even if this Court both had and should exercise jurisdiction, Acuity does not and cannot provide any basis for why, even accepting its well-plead factual allegations as true, Acuity would be entitled to a declaration from this Court limiting its liability in the underlying action to $2 million. Just as Acuity's request that this Court entertain jurisdiction on this issue is incredible, so too is the specific requested declaratory relief on this issue. Indeed, it appears to be entirely frivolous.

In its complaint, Acuity requests, among other things, "[t]hat this Court

adjudicate and declare as a result of **Tennessee substantive law guiding any assessment of contractual and extra-contractual obligations**, Acuity cannot be liable **in the tort litigation** for more than the combined policy limits of $2,000,000." Compl. [Doc. 1] at 18 (emphasis added).

But, as to the Monroes, this request is entirely baseless. The Monroes are not a party to any insurance contract between Acuity and Lane's. The Monroes were not injured in Tennessee, and they did not bring any claims against anyone—let alone Acuity—under Tennessee law. The Monroes were injured because a truck directly collided with Mr. Monroe in Georgia, and the Monroes filed a tort action in Georgia under Georgia law for their personal injuries.

As such, nothing in Tennessee law, nor any law governing contractual or extra-contractual obligations, could possibly have any effect on the Monroes' judgment against Acuity in the underlying action. The Monroes' judgment against Acuity is for the full amount of the jury's verdict (minus the 0.01% apportioned to Greefus Patterson), and any questions regarding potential limits on that judgment must be answered by Georgia courts under Georgia law. Indeed, pending decision by the Georgia Supreme Court, those questions have been answered. *See, e.g.*, *Lane's v. Monroe*, Monroes' Sup. Ct. Br. (Ex. 9) at 30 ("Acuity fails to mention that it *chose* not to ask the trial court to limit its judgment to the policy limits.").

Once again, it is important to be clear about what Acuity is asking the Court to do with this specific request. While Acuity may have a non-frivolous basis for asking this Court to apply Tennessee law to a potential negligent-failure-to-settle claim by Lane's and McGuffee against Acuity,[4] that is not what this specific request asks the Court to declare. *Compare* Compl. [Doc. 1] at 18 (request #3) *with id.* (requests #2, #4-7). This request (request #3) asks this Court to "adjudicate and declare" under "Tennessee substantive law" what Acuity's liability *to the Monroes* should be in a personal-injury action brought in *Georgia* under *Georgia* law. *Id.*

There is absolutely no basis for such request, even accepting all of Acuity's well-plead factual allegations as true. Thus, even if this Court both had and should exercise jurisdiction, it should dismiss this specific request for failing to state a claim upon which relief can be granted.

## Conclusion

For those reasons, this Court should dismiss Acuity's complaint in whole, if it finds that subject-matter jurisdiction is lacking or that it should decline to exercise

---

[4] To be clear, the Monroes believe that any negligent-failure-to-settle claim by Lane's and McGuffee against Acuity is speculative and contingent at this point because, as set forth above, the appeals process has not been completed, and because Acuity is liable for the full judgment. Moreover, even if such claims were to materialize, the Monroes believe that Georgia law would correctly apply. The Monroes simply emphasize that this specific request—request #3 in Acuity's prayer for relief—asks this Court to decide something much different than those questions.

jurisdiction. Or the Court should dismiss Acuity's complaint in part, if it finds that

it has and should exercise jurisdiction.

This motion is submitted on June 28, 2022.

**/s/ Naveen Ramachandrappa**

Naveen Ramachandrappa
Ga. Bar No. 422036
BONDURANT, MIXSON &
ELMORE, LLP
1201 W Peachtree St NW, Ste 3900
Atlanta, GA 30309
Tel: 404-881-4151
Fax: 404-881-4111
*ramachandrappa@bmelaw.com*

*Attorneys for Defendants*
*Donald Monroe and Rhonda Monroe*

## CERTIFICATE OF FONT AND POINT SELECTION

I certify that, pursuant to Local Rule 7.1 (D), this brief has been prepared with one of the font and point selections—Times New Roman, 14 point—approved by the Court in Local Rule 5.1 (B).

**/s/ Naveen Ramachandrappa**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that, on June 28, 2022, I served **Defendants Donald Monroe And Rhonda Monroe's Motion To Dismiss Plaintiff Acuity, A Mutual Insurance Company's Complaint** by using CM/ECF, which notify the following counsel:

<u>*Attorneys for Plaintiff Acuity, A Mutual Insurance Company*</u>
Matthew F. Boyer
M. Cole Walker, Jr.
FREEMAN MATHIS & GARY, LLP
100 Galleria Pkwy, Ste 1600
Atlanta, GA 30339
Tel: 770-818-0161
mboyer@fmglaw.com
cole.walker@fmglaw.com

Parks T. Chastain
Cory R. Miller
BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC
545 Mainstream Dr, Ste 101
Nashville, TN 37228
Tel: 615-630-7745
pchastain@bkblaw.com
cmiller@bkblaw.com

<u>*Attorneys for Defendant Lane's Equipment Rental, Inc. and Daniel McGuffee*</u>
James N. Sadd
Richard Dolder, Jr.
SLAPPEY & SADD, LLC
352 Sandy Springs Cir
Atlanta, GA 30328
Tel: 404-255-6677
jay@lawyersatlanta.com
rich@lawyersatlanta.com

**/s/ Naveen Ramachandrappa**